UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLOBAL NAPS, INC. )
  Plaintiff   )
       )     Civil Action No. 02-12489-RWZ
v.       )
       )     Civil Action No. 05-10079-RWZ
VERIZON NEW ENGLAND, INC, )
  Defendant  )
       )

**REPLY TO THE PENNSYLVANIA PUBLIC UTILITIY COMMISSION'S
LAW BUREAU PROSECUTORY STAFF'S ANSWER
TO SECOND EXPEDITED MOTION BY RECEIVER, CARL F. JENKINS FOR
<u>FURTHER INSTRUCTIONS AND ORDERS</u>**

<u>INTRODUCTION</u>

As alleged in the Receiver's Second Expedited Motion For Further Instructions And

Orders (hereinafter the "Second Motion") previously filed with this Court, the Pennsylvania

Public Utility Commission's Law Bureau Prosecutory Staff (hereinafter the "PUC Staff") on or

about November 2, 2010, filed a new Formal Complaint (hereinafter the "Complaint") seeking

revocation of Global NAPs' Pennsylvania Certificate of Public Convenience (hereinafter the

"Certificate") by the Pennsylvania Public Utility Commission (hereinafter the "PUC") for an

alleged failure to comply with PUC lawful tariffed access charges for inter-exchange services

provided by Palmerton (Pennsylvania) Telephone Company and for ignoring further sanctions

arising therefrom.

As a result of the PUC Staff's Complaint, the Receiver filed the Second Motion with this

Court on or about December 6, 2010. Such Second Motion was served on the PUC Staff on or

about December 6, 2010. The Second Motion sets forth, inter alia, that the PUC Staff had actual

notice of this Court's Order and Amended Order For Appointment Of Keeper And Receiver,

dated May 6, 2010 and May 13, 2010 respectively, the Amended Order containing injunctive

language restraining any and all persons from commencing any action in any court or elsewhere

against the Receiver regarding the Receivership Property, *except with the express permission of*

*this Court obtained after filing a motion on notice to the Receiver, all parties to this action and*

*SNET.* (¶11, Amended Order)(emphasis added).

Thereafter, on or about December 22, 2010, the PUC Staff submitted its Answer (the

"Answer") to The Second Motion by filing the Answer with this Court, and thereby submitting

itself to the jurisdiction of this Court while advancing arguments in opposition to the Second

Motion.  This Court subsequently scheduled a hearing on the Second Motion for February 15,

2011.

Subsequent to submitting itself to this Court's jurisdiction, on January 7, 2011, the PUC

Staff filed with the PA PUC its Motion For Judgment On The Pleadings, serving same on the

Receiver herein by mailing a copy of such Motion to Receiver's Counsel on that date. By letter

dated February 1, 2011, the PUC Staff notified the PUC of Global NAPs failure to file

opposition to the Motion for Judgment on the Pleadings, indicating to the PUC that the matter is

ripe for disposition, including a determination that Global NAPs Certificate should be revoked.

## ISSUES

**I.**   **IS THE PUC STAFF SUBJECT TO THE JURISDICTION OF THIS COURT?**

**II.**   **IS THE CERTIFICATE IN QUESTION A PROPERTY RIGHT SUBJECT TO THIS COURT'S RESTRAINING ORDER?**

**III.**   **HAS THE PUC STAFF FOLLOWED THE APPROPRIATE PROCEDURE IN PURSUING THE REVOCATION OF THE GLOBAL NAPs' CERTIFICATE?**

IV.   **DID THE PUC STAFF DELIBERATELY VIOLATE THE LAWFUL ORDER OF THIS COURT IN FILING ITS MOTION FOR JUDGMENT ON THE PLEADINGS ON JANUARY 7, 2011 WITH THE PUC?**

## ARGUMENT

I.   **IS THE PUC STAFF SUBJECT TO THE JURISDICTION OF THIS COURT?**

This court clearly maintains jurisdiction over the Global NAPs' entities and the property thereof despite the protestations of the PUC Staff to the contrary.  The United States Court of Appeals noted …" that under the new Code, it is the district court, not the bankruptcy court which has exclusive jurisdiction of all the property of the debtor wherever located." Cournoyer v. Town of Lincoln, 790 F2d 971, U.S.C.A. (1st Circuit) 1986.  Such jurisdiction is governed by 28 U. S.C.§ 1334 (d) and was imbedded in this Court's Amended Order granting the Receiver the right to, inter alia, operate the business of the Global NAPs entities and its concomitant restraining order enjoining interference with such operation. Counsel to the Receiver filed notice of the Receivership with various jurisdictions throughout the United States including the Commonwealth of Pennsylvania.  In fact, the PUC Staff is not arguing that it has not received notice of the Receivership or the injunction against actions against the Receiver; it is asserting, rather, that (1) the PA PUC is not a creditor and/or subject to this Court's jurisdiction; (2) a Pennsylvania Certificate of Public Convenience is not a property right; and (3) the appointment of a federal receiver does not preempt all state law.  ¶ 3, Answer Of The Pennsylvania Public Utility Commission Prosecutory Staff In Opposition To The Second Motion.

In its attempt to circumvent jurisdiction, the PUC staff argues that it is not a creditor of the Receivership estate, disingenuously proffering that it is attempting to collect the debts of private utility companies within its domain, not its own.  The PUC staff also offers other reasons why GNAPs' Certificate should be revoked such as its alleged failure to file an annual report and

other documentation as required by the PUC – hardly a compelling excuse for revoking GNAPs'

Certificate.  And the circuitous argument that the PUC is not a creditor but merely enforcing the

claims of alleged creditors does not avoid the application of the "pecuniary purpose" test as it

relates to the "public policy" test so thoroughly discussed in In Re Jerome Berg, 230 F.3d 1165

(9th Cir. 2000).  There, the court described the standard of determining "whether the government

action relates primarily to the protection of the government's pecuniary interest in the debtor's

property or to matters of public safety and welfare," *citing* In Re Universal Life Church, 128

F.3d 1294 (9th Cir. 1997).  Collecting debts on behalf of its member companies, issuing sanctions

for non-compliance, and revoking a certificate for an alleged failure to file an annual report and

"other documentation" are acts which certainly are not matters which fall under the definition, no

matter how broadly it is interpreted, of public safety and welfare and, more certainly, should not

invoke the cloud of police powers and public policy.  The PUC Staff's arguments have more to

do with the collection of amounts allegedly owed to Palmerton, and now allegedly to Ironton,

two of PUC's member companies, and less to do with GNAPs' legal fitness pursuant to public

convenience, interest and safety of a public utility service.

Each of the PUC Staff's arguments are solely for the determination of this Court, under

its exclusive jurisdictional purview.  It is axiomatic that the PUC Staff, in this regard, filed a

general Appearance and Answer, arguing the merits of its position, thus submitting itself to this

Court's jurisdiction.  Moreover, 28 U.S.C. §959 (a) gives this Court, as the appointing court, the

power to enjoin the action if this Court finds the action threatens the administration of an estate,

in this case the Receivership estate.  Diners Club, Inc. v. Bumb, 421 F2d 396 (9th Cir. 1970).

## II.     IS THE CERTIFICATE IN QUESTION A PROPERTY RIGHT SUBJECT TO THIS COURT'S RESTRAINING ORDER?

The PUC Staff raises two adjoining arguments in support of its opposition to the Receiver's Second Motion: (i) the Certificate of Public Convenience is not "property" and therefore, not subject to this Court's restraining order, and (ii) even if it is property, since it is not transferrable without the permission of the PUC, there is no value to the Certificate.  Neither argument is supported by statute or federal case law.  The premise that Global NAPs' Certificate is not property pursuant to Pennsylvania law and, therefore, it is an absolute that this Court lacks jurisdiction is trumped by a series of federal cases which hold otherwise.   The court in In Re McClain Airlines, Inc., 80 B.R. 175, 177 (Bankr.D.Ariz 1987) states that "[L]icenses and permits from governmental agencies are usually found to be estate property", citing In Re Miller, 68 B.R. 885 (Bankr.W.D.Pa. 1986).  The McClain Airlines court then proceeded to rule that, despite the Federal Aviation Agency's express regulation that an airport landing slot does not represent a property right but represents a privilege subject to absolute FAA control, and although great deference is given to the Agency's decision, "it is doubtful a slot is subject to absolute FAA control", id. at 178–179.  However, the McClain court clearly challenged the FAA's right to conclusively determine that a landing slot cannot constitute a property right as a matter of law. Courts, including the Bankruptcy Court, hold that the definition of "property" is broad.  In Re American Central Airlines, 52 B.R. 567 (Bankr.1985) citing In Re Wegner Farms, Co., 49 B.R. 440 (Bankr.N.D.Iowa 1985).

The principle that a permit or license constitutes property is echoed and expounded in In Re Richard C. Barnes, 276 F.3d 927, (7th Cir. 2002), wherein that court determined that the bankrupt's liquor license was property of the estate "… even though it was not property under Indiana law, *and even though it required approval to transfer and was subject to revocation for misconduct under Indiana law."* (emphasis added).  The argument which the PUC Staff

advanced when it states in its Answer that "there is no assurance that the PA PUC would

authorize a transfer or resale of this particular certificate … "*id*, Paragraph 9, does not, therefore,

enhance or strengthen its position that the Certificate in question is not a property right, nor that

is loses all value because it can be revoked and it cannot be transferred without the approval of

the PUC.  The issue is placed squarely within the jurisdiction of this Court for determination.

### III.  HAS THE PUC STAFF FOLLOWED THE APPROPRIATE PROCEDURE IN PURSUING THE REVOCATION OF THE GNAPs' CERTIFICATE?

The purpose of this Court's Order enjoining actions such as that of the PUC Staff with

respect to GNAPs' Certificate was to centralize all disputes of the Receivership estate so that the

Receiver could liquidate the Judgment Debtors businesses and assets in an orderly and efficient

manner, to "proceed efficiently, unimpeded by uncoordinated proceedings in other arenas," SEC

v. Brennan, 230 F3d 65 (2nd Cir. 2000), *citing* In Re United States Lines, 197 F3d at 640.  In fact,

this consolidation of any and all actions against the Judgment Debtors and affiliated entities was

the very purpose of this Court's injunction and the reason behind the Receiver's filing of the

various notices of this Receivership throughout the United States in compliance with 28 U.S.C.

754.  Indeed, counsel to the Receiver has been able to forestall and curtail numerous collateral

attacks by creditors and third parties in other jurisdictions pursuant to this Court's restraining

order as a direct result of the injunction contained in the Order.  As it relates to the matter at bar,

the PUC and the PUC Staff do not dispute that they had notice of the Receivership Order. The

matters raised and asserted by the PUC Staff are rightfully before this Court and not the subject

of determination unilaterally by the PUC and PUC Staff.

Since the PUC Staff has filed its Answer to the Receiver's Second Motion, the matters

for review and decision are now before this Court despite the PUC Staff's continuance of its

efforts to thwart this Court's order with the filing by the PUC Staff of its Motion For Judgment On The Pleadings with the PA PUC, *after filing its Answer herein and actually submitting itself to the jurisdiction in this District.* Not present in the PUC Staff's Answer is even a remote suggestion that the PUC Staff filed a special appearance and/or limited its appearance for the sole purpose of opposing the Second Motion and without submitting to this Court's jurisdiction.

**IV.  DID THE PUC STAFF DELIBERATELY VIOLATE THE LAWFUL ORDER OF THIS COURT IN FILING THE MOTION FOR JUDGMENT ON THE PLEADINGS ON JANUARY 7, 2011 WITH THE PA PUC?**

The Order appointing the Receiver in this matter was entered on May 6, 2010. On May 13, 2010 the Amended Order was entered by this Court.  It is the Receiver's understanding that on or about August 2010 shortly after the PUC entered its decision on Global NAPs Motion for Reconsideration in the Palmerton matter, Global NAPs local Pennsylvania counsel, Dan Delaney provided the PUC's Chief Counsel, Buck Pankiw with a copy of the Amended Receivership Order.  At the time that the PUC Staff filed its Formal Complaint with the PUC on or about November 2, 2010, seeking to revoke Global NAPs Certificate of Public Convenience in the Commonwealth of Pennsylvania, the PUC had actual notice of that Global NAPs was in Receivership and had been provided with a copy of the Amended Order.

Upon receipt of a copy of the PUC Staff's Formal Complaint, the Receiver filed his Second Motion For Further Instructions And Orders on December 6, 2010.  The Second Motion clearly indicates the Receiver's concerns about the sanctity of this Court's injunction against third party actions, the consolidation of all such actions solely under this District's jurisdiction and the preservation of the Receivership assets, including Global NAPs' Pennsylvania Certificate Of Public Convenience.

On December 22, 2010, the PUC Staff filed its Answer to the Second Motion questioning this Court's jurisdiction, and the characterization of the Certificate as "property" of the Estate, which hearing is presently scheduled for February 15, 2011.  Despite submitting itself to the jurisdiction of this Court on December 22, 2010, on January 7, 2011, the PUC Staff filed with PUC its Motion For Judgment On The Pleadings seeking, inter alia, the immediate revocation of Global NAPs' Certificate.  Even assuming, arguendo, that the PUC Staff was not aware of the Amended Order containing the Court's injunctive language when it filed its original Formal Complaint with the PUC on or about November 2, 2010, (which the Receiver does not concede), the PUC Staff was fully aware of the injunction when it filed its Motion For Judgment On the Pleadings on January 7, 2011 with the PUC.  It cannot be disputed that the PUC Staff submitted itself to this Court's jurisdiction on December 22, 2010, when it filed its Answer to the Receiver's Second Motion, and was by then well aware of the Order and the injunction.  To ignore the obvious restraint against its continuing efforts to terminate the Certificate in question prior to resolution herein is not only ill-advised, it is a glaring disregard for this Court's lawful orders.  In the preparation of its Answer, and the research in that process, there can be no doubt that the PUC Staff located case law which indicated that the PUC Staff MIGHT be on the wrong side of this issue at bar.  Despite those indications, the PUC Staff has proceeded to frustrate the efforts of the Receiver herein and to force the Receiver to incur the cost and expense of defending against the misguided actions of the PUC Staff in this cause.

In fact, the PUC Staff has asserted minimal harm, if any, by the continuance of the Global NAPs' Certificate- no criminal conduct, no public fraud, no environmental contamination, nothing which rises to the level of police or regulatory powers which might except the PUC and the PUC Staff from this Court's restraint during the period that the Receiver

is attempting to liquidate the businesses of the Global NAPs entities in a careful, steady and logical manner.[1]  The wrongful conduct alleged by the PUC Staff encompasses the alleged non-payment of charges to its member companies (which charges the Receiver may have reason to believe are inflated and fraudulent) and the possible failure by Global NAPs to have filed an annual report and other documentation.  These failures, in turn, triggered sanctions by the PUC which supposedly indicate that Global NAPs is not qualified to hold its Certificate with the Commonwealth of Pennsylvania.

Therefore, it is clearly within this Court's judicious discretion and exclusive jurisdiction to decide whether to release the PUC Staff from the extant restraining order pursuant 28 U.S.C. §959 (a).  The PUC Staff could have, albeit should have, sought relief from this Court's restraining order prior to the filing of any pleadings or process before the PUC.  The PUC Staff declined to follow the appropriate procedure which constitutes a violation of the subject restraining order and, as such, this Court should impose sanctions for the violation of its clear and unequivocal order.

<u>CONCLUSION</u>

The Pennsylvania Certificate of Public Convenience held by Global NAPs is definitively "property" which is an asset of the Receivership Estate. Despite the fact that the PUC can control the transfer of said Certificate, such control does not affect or diminish this Court's ability to permit its Receiver to manage, market and sell the GNAPs' businesses including the Certificate. Further, case law distinctly supports the proposition that even when state law provides that a license or permit (or certificate in this case) is not "property", federal law states the opposite.

---

[1] It is curious to note that the PUC Staff would not want to work with and assist the Receiver in the disposition of Global NAPs operating business assets in a more positive manner, because presumably a sale would benefit the Receivership Estate and the Commonwealth of Pennsylvania with a more desirous organization.

The types of wrongful conduct *alleged* by the PUC Staff to terminate the Certificate are

de minimis and do not invoke the specter of police and regulatory powers envisioned by

Congress as exceptions to this Court's discretion and jurisdiction in the preservation of such

Certificate as property of the Receivership Estate.

The actions by the PUC Staff in filing its formal Complaint and, more importantly, its
Motion For Judgment On The Pleadings with the PUC, seeking termination of the Global NAPs'
Certificate, with full knowledge of this Court's restraining order against such actions, and clearly
after it brought itself within the jurisdiction of this Court having filed its Answer to the Second
Motion, are a haughty indication that the PUC Staff willfully and misguidedly decided to, and
proceeded to, violate this Court's lawful restraining order.  Such actions are deserving of the
imposition of sanctions against the PUC Staff.  More importantly, however, is the preservation
and protection of Receivership Estate property at a critical time in the disposition of the assets of
the Estate.[2]

Respectfully submitted
Carl F. Jenkins, Receiver
By his counsel,

        /s/Donald H.C. Libbey

Donald H. C. Libbey BBO # 638397
Steven J. Marullo BBO # 323040
Donald H. C. Libbey, P. C.
P.O. Box 920612
210 Highland Avenue, Ste. 2
Needham, MA 02492
(781) 444-0044
(781) 444-0944 (facsimile)
dhclibbey@lawboston.com

Date: February 8, 2011                    sjmlaw@verizon.net

---

[2] Over the past several months, the Receiver has conducted numerous management meetings and site
visits with, and provided due diligence materials to, several parties interested in purchasing the assets of
the Global NAPs operating companies and various other Estate assets. Subsequently, Bid Packages were
provided to eight (8) interested parties. Bids are due on February 10, 2011.  Following the submission of
Bids, the Receiver will evaluate any submission(s), and will determine which Bid(s) is/are in the best
interest of the Receivership Estate, after which acceptable Bid(s) will be submitted to the Court for
approval, subject to appropriate notice, and and objections in the form of higher bids.

CERTIFICATE OF SERVICE

I hereby certify that I served the within document(s) through the ECF system, and that copies will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants as of the date herein, and to the Pennsylvania Public Utilities Commission.

/s/ Donald H. C. Libbey

Donald H. C. Libbey

Dated: February 8, 2011