UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


GLOBAL NAPS, INC.,                )
                                  )
     Plaintiff,                   )
                                  )
                                  )    Civil Action
vs.                               )    No. 02-12489-RWZ
                                  )
VERIZON NEW ENGLAND, INC.,        )
d/b/a VERIZON MASSACHUSETTS,      )
et al,                            )
                                  )
     Defendants.                  )


**RECEIVER'S MOTION TO AUTHORIZE SALE OF AIRCRAFT**


BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE


UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
February 22, 2011
2:30:00 p.m.


\*   \*   \*   \*


CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(617) 261-0555

```
 1      APPEARANCES:

 2

 3
        For the Plaintiff:
 4
        GOOD & CORMIER
 5      By:  Andrew H. Good, Esq.
             83 Atlantic Avenue
 6           Third Floor
             Boston, MA 02110-3711
 7

 8

 9      For the Defendant Verizon:

10      GIBSON, DUNN & CRUTCHER LLP
        By:  Robert L. Weigel, Esq.
11           200 Park Avenue
             47th Floor
12           New York, NY 10166-0193

13

14
        For Interested Party Arltek Holdings, Inc.:
15
        FOX ROTHSCHILD LLP
16      By:  Eric C. Osterberg, Esq.
             One Landmark Square
17           21st Floor
             Stamford, CT 06901-2601
18

19
        For Interested Party
20      Pro Star Pilatus Center LLC:

21      GOULSTON & STORRS, PC
        By:  Christine D. Lynch, Esq.
22           400 Atlantic Avenue
             Boston, MA 02110
23

24
        (Appearances continued on next page.)
25
```

```
 1
 2      APPEARANCES: (Cont'd)
 3
 4      For the Receiver:
 5      DONALD H. C. LIBBEY P.C.
        By:  Donald H.C. Libbey, Esq.
 6           P.O. Box 920612
             210 Highland Avenue
 7           Suite 2
             Needham, MA 02492
 8
 9      -and-
10
        LAW OFFICES OF STEVEN J. MARULLO
11      By:  Steven J. Marullo, Esq.
             435 Newbury Street
12           Suite 217
             Danvers, MA 01923
13
14
15
        ALSO PRESENT:
16
        CBIZ Tofias
17      By:  Carl F. Jenkins, Receiver
             350 Massachusetts Avenue
18           Cambridge, MA 02139
19
20
21
22
23
24
25
```

```
1                         P R O C E E D I N G S
2              (The following proceedings were held in open court
3    before the Honorable Rya W. Zobel, United States District Judge,
4    United States District Court, District of Massachusetts, at the
5    John J. Moakley United States Courthouse, 1 Courthouse Way,
6    Boston, Massachusetts, on February 22, 2011.)
7              THE COURT:  Good afternoon.  Please be seated.
8              MR. LIBBEY:  Good afternoon.
9              COURTROOM DEPUTY URSO:  This is Global NAPS versus
10   Verizon, Civil Action No. 02-12489.  If counsel could, please,
11   identify themselves for the record.
12             THE COURT:  We have for the receiver, Mr. Libbey.
13   And Mr.?
14             MR. MARULLO:  Marullo, your Honor.
15             THE COURT:  Marullo?
16             MR. MARULLO:  Steven Marullo, yes.
17             THE COURT:  The motion is the receiver's motion to
18   authorize the sale of aircraft, free and clear of all claims
19   and liens.  Is there anyone here who is opposing the motion?
20             MR. OSTERBERG:  Yes, your Honor.
21             THE COURT:  Mr. Osterberg.
22             MR. OSTERBERG:  Eric Osterberg for Arltek Holdings,
23   Incorporated.
24             THE COURT:  I'm sorry.  The name of your -- Arltek?
25             MR. OSTERBERG:  Yes.  We submitted opposition on ECF.
```

1          THE COURT:  Any other opposition to the motion?

2          (No response.)

3          THE COURT:  Anybody in support of the motion or, Mr.

4    Weigel, are you observing?

5          MR. WEIGEL:  We're very much in favor of selling the

6    planes, your Honor, and we're also in favor of getting the

7    highest price possible.  I did understand there was another

8    bidder, who has not -- I don't know if he understands that he

9    was opposing the motion by submitting a bid.

10          THE COURT:  No.  He understands.

11          MS. LYNCH:  Hi, your Honor.  Christine Lynch,

12    Goulston Storrs, on behalf of Pro Star Pilatus, which is the

13    initial bidder in this matter.

14          THE COURT:  Okay.  Tell me your name again, please.

15          MS. LYNCH:  It's Christine Lynch.

16          THE COURT:  Lynch.  All right.

17          Mr. Jenkins, will you speak for the receiver or will

18    Mr. Libbey?

19          MR. LIBBEY:  For the time being, your Honor, I'll

20    speak for the receiver, your Honor.

21          THE COURT:  Okay.

22          MR. LIBBEY:  Your Honor, we're here today on the

23    receiver's motion to sell the aircraft with a stalking-horse

24    bid from Pro Pilatus, which was submitted to the Court, along

25    with several orders with respect to notice, et cetera.

1          In the interim period, we received two other bids;

2     one from Skytech, Inc. and -- the Skytech folks were supposed

3     to bring a certified check, your Honor.  He's here.  He has

4     it.  Very good.  And Mr. Osterberg's client, Arltek, submitted

5     also a competing bid.

6          If the Court would like, I can hand up copies of the

7     bids, because you likely have not seen all three, your Honor.

8     I'd be happy to do that and just go through them quickly, if

9     you would like.

10          THE COURT:  Okay.

11          (Attorney Libbey hands documents to the Court.)

12          MR. LIBBEY:  The original bid, your Honor, which was

13     submitted with the receiver's motion, was from Pro Star

14     Pilatus.  They submitted a bid for $4.6 million for both

15     aircraft, split at $3.4 million for the Cessna jet and $1.2

16     million for the Pilatus turbo --

17          THE COURT:  They're going as a bundle, right?

18          MR. LIBBEY:  That's correct, your Honor.

19          THE COURT:  You're not selling them separately?

20          MR. LIBBEY:  That's correct, your Honor.

21          THE COURT:  Okay.

22          MR. LIBBEY:  That's how the bid was submitted.

23          The contingencies with respect to the Pilatus bid,

24     your Honor, was an inspection, once the Court had approved

25     their bid, and a pre-flight -- or a flight test as well,

1   certifications that go with the planes, spares parts, et

2   cetera.  Subject to -- also to a bill of sale and other

3   related transaction documents.

4         As part of that bid, your Honor, there was a $50,000

5   break-up fee in the event that Pro Star Pilatus was not the

6   successful bidder to pay for their due diligence in submitting

7   their bid, legal fees, et cetera.

8         The other aspect --

9         THE COURT:  You mean you're supposed to pay them if

10  they're not successful?

11        MR. LIBBEY:  Correct, your Honor.  We made a

12  condition on any other bidder that they would cover that

13  particular contingency.  So that the receiver would not be out

14  of pocket, so to speak, or the receivership would not be out

15  of pocket for that.

16        The other aspect of the Pro Pilatus bid is that there

17  is a broker's fee or a finder's fee to the gentleman who

18  introduced Pro Pilatus to the sale of the planes in the amount

19  of four percent or $180,000.  So, that's part of their bid.

20        The second bid we received, your Honor, was from

21  Arltek, Mr. Osterberg's client, and the difference between the

22  Pro Pilatus and the Arltek is that Pro Pilatus was an asset

23  purchase, your Honor.  They were just purchasing the assets of

24  the existing receivership companies, CJ3, Inc. and RJ

25  Equipment.  Arltek has offered to buy the existing companies

1   or shares of the companies because they would like to try to

2   -- or they want to assume the existing debt, which as of today

3   is about $1,040,000 on the CJ3.

4              THE COURT:  Wait a minute.  Say that again.  Arltek

5   wants to pay for the entire company that owns the airplanes?

6              MR. LIBBEY:  Yes, rather than --

7              THE COURT:  Including the airplanes and all other

8   assets?

9              MR. LIBBEY:  Correct, your Honor, for the two

10  corporations, the shares.  And one of the reasons we

11  understand they're doing that is because they want to assume

12  the existing financing on the Cessna jet, which is a little

13  over a million dollars still owing on that particular --

14             THE COURT:  So, what are they offering?

15             MR. LIBBEY:  They're offering 4.85 million, your

16  Honor.  Their bid includes no inspection or test flight and

17  they -- the only other aspect that they're looking for is the

18  removal or modification of certain of the injunctions that are

19  in place in this case as well as a case in front of Judge

20  Gorton in order to facilitate -- my understanding, to finance

21  the planes and close the deal.

22             The third bid, your Honor, was from Skytech, which is

23  a Mid-Atlantic company out of Baltimore, that offered

24  $4,725,000, and their bid is subject to the same conditions as

25  the Pro Pilatus closing, of a test flight and inspection, et

1    cetera.  And those are the three bids that are presently

2    before the Court.

3          And the receiver -- if you recall, your Honor, one of

4    the aspects of the objection was in the form of higher bids.

5    We do have objections in the form of higher bids from two of

6    the bidders, and the receiver, in submitting his motion to the

7    Court and in the Court's initial order on notice, the

8    provisions were that the receiver, in the best interest of the

9    estate, could accept other bids, could hold an auction, either

10   by sealed bid, or otherwise, in order to maximize the value of

11   the sale of these assets.

12         At this time, your Honor, the receiver would like to,

13   with the Court's permission, do a sealed bid with the existing

14   bidders, if they choose to, so that he can maximize the value

15   of the existing aircraft assets.

16         THE COURT:  I assume there's no objection.

17         MR. OSTERBERG:  Well, your Honor, we object because

18   we've just had a sealed bidding process and we're the high

19   bid.

20         THE COURT:  Well, you're in a peculiar position now

21   because your bid is different from the other two bids.

22         MR. OSTERBERG:  Not in any material respect, your

23   Honor.  There's -- one of the conditions that the receiver

24   asked us to comply with in terms of making our bid was that we

25   identify the assets that we would be getting as a result of

1   the stock purchase.

2          THE COURT:  But one needs to distinguish between the

3   assets that you would be getting under your bid and the assets

4   that the other bidders are getting under their bids.

5          MR. OSTERBERG:  But there really is no material

6   distinction.  These are single-purpose entities.  That's all

7   they do.  They own these aircraft.  They have aircraft.  They

8   have records.  They have, you know, whatever sort of sundry

9   things go with the aircraft.  It's my understanding that's

10  what's being purchased by everybody else and that's what would

11  be purchased by us.  The only thing that I can think of that's

12  really a difference is the name of the company.

13         And the reason that we wanted to do it the way it is,

14  is because we have -- because in place for each of those

15  companies are the maintenance agreements, the financing for

16  the CJ3.  All of that various -- those various things are in

17  place.  So, for us -- you know, we just assume keep all of

18  that going rather than starting from square one.  So, there's

19  really no difference in what's being purchased here.

20         THE COURT:  Well, in that case, would you be quite

21  willing to just buy the airplanes without the company for the

22  same price?

23         MR. OSTERBERG:  We would be willing to buy the

24  airplanes and then the various asserted things that go with

25  them, the documents, the -- you know, the assets of the

1   company as opposed to the stock.

2        THE COURT:  Ms. Lynch.

3        MS. LYNCH:  Your Honor, based on the initial

4   structure, at least, of the Arltek bid, we do think that it's

5   materially worse than our -- my client's bid.  We understand

6   that Arltek was just formed recently, February 2nd of 1211.

7   We understand that Mr. Gangi or his relative is somehow

8   affiliated with this entity.

9        We understand that Arltek has not presented any

10  evidence to the receiver that it has the ability to consummate

11  the sale, and Arltek's bid does state that it will assume the

12  indebtedness to Cessna Finance.  Well, Cessna would have to

13  consent to that for that to actually happen.  So, we

14  understand that that has not occurred.

15       So, we're not -- we take the position that their bid

16  is not a qualified bid, your Honor.  The bid procedures -- you

17  say that the bids have to be on the same terms and conditions

18  as the initial bid and theirs was not.

19       THE COURT:  Well, I understand that Mr. Osterberg now

20  says he is prepared to bid the same amount, but on the same

21  terms as the other bidders.  That is, not the company, but

22  only the airplanes, subject to the same conditions that you

23  are subject to or agreed to.

24       MS. LYNCH:  Well, I think that raises the question

25  whether there is a financing constituency to his client's bid,

1    because I think they were proceeding on the assumption that

2    they could assume the financing that was in place.  So, that

3    raises to my mind a question of whether they even have the

4    money to buy these planes.

5             THE COURT:  Mr. Libbey.

6             MR. LIBBEY:  Your Honor, we wouldn't take a position

7    on that because the bids require a closing within 30 days.  If

8    they've got to getting financing, that's on theirs.  They put

9    at risk $50,000 as a deposit.  So, our belief right now is the

10   bids have to stand on their own based on what's been presented

11   to the Court.

12            THE COURT:  Mr. Weigel.

13            MR. WEIGEL:  Your Honor, I would -- obviously,

14   Verizon wants to get the highest price possible.

15            THE COURT:  Yes, but what do we do?  What's your

16   suggestion as to how we should proceed?

17            MR. WEIGEL:  I would go along with Mr. Libbey's

18   suggestion that we -- you know, that -- I believe that the

19   order he submitted provided for just this possibility.  In

20   fact, no one would ever be in a position of stalking-horse

21   bidder if they didn't have the opportunity to increase their

22   bid.  The whole point of this is to get the highest price for

23   the assets.

24            I agree -- I have some concerns.  Arltek is somehow

25   related to Mr. Gangi.  I mean, I don't -- I know that in my

1    stomach.  I can't prove it to you, but I suspect that, and --

2    but, you know, the money is green, if he comes up with it, and

3    if it's done in 30 days, great.  I do fear that if they're the

4    winning bidder, that we might be back here again with one less

5    bidder the next time, but at least --

6            THE COURT:  Well, it seems to me that we should

7    proceed with the bidders who are here today, and I see no

8    reason why we could not also include in an order a provision

9    that if within 30 days the person who is today deemed to be

10   the winner drops out or can't go forward, that the next

11   highest bid is the one who wins.  I mean, is there any problem

12   with that?

13           MS. LYNCH:  Well, your Honor, if we're forced into

14   the position of bidding against a bidder that may not be a

15   legitimate bidder, by that I mean cannot close, I'm not sure

16   that --

17           THE COURT:  I'm not assuming that.

18           MS. LYNCH:  Right, but then we're going to be

19   proceeding into a process where we're bidding against someone

20   who may not be able to close.  And so, our bid is going up and

21   then we're forced to be bound to that bid when the process

22   itself may not have been legitimate.

23           THE COURT:  No.  The process itself isn't being

24   changed.  It's just that -- it could be that you're the

25   winning bidder and something happens and you can't go forward,

1    in which case rather than having a new set of bidding, we will

2    simply go to the next bidder.  We're not assuming that the

3    process will not lead to a closing with the bidder who is the

4    winning bidder today.  We're not assuming that at all.  We're

5    simply providing for the possibility of such contingencies.

6            Now, Mr. Libbey, what about the fact that there is a

7    difference in not just money, but in other areas between

8    Arltek and the other two, in that Arltek wanted to buy the

9    company?  If, in fact, Arltek now were in the next round to

10   bid simply for the airplanes, as did everybody else, would

11   that -- would you care whether it's the company or the

12   airplanes?

13           MR. LIBBEY:  No, your Honor.  It would actually be

14   easier for the receiver to just sell the assets rather than

15   the companies.  So, he would be in favor of that, and I think

16   it makes the bids apples to apples rather than apples to

17   pears, so to speak.  Would that different aspect --

18           THE COURT:  I mean, if two of them bid for the

19   airplanes and one bids for the company?

20           MR. LIBBEY:  Well, I think Mr. Osterberg -- correct

21   me if I am wrong -- has indicated that he would just bid for

22   the aircraft in a sealed bid.

23           THE COURT:  That's what I'm asking you.  Is that

24   better for the receiver?

25           MR. LIBBEY:  It's more economical for the receiver,

1    your Honor, because it's an easier transaction.

2         THE COURT:  Well, then I think that's what we should

3    do, because it's not appropriate to compare a bid for the

4    company with a bid for the airplanes.  So, we should go

5    forward with bids for the airplanes only.

6         MR. OSTERBERG:  Your Honor, if I may.

7         I just wondered if we could probe Mr. Libbey a little

8    bit about why it's less economical to sell the stock.  It's

9    just I'm selling the stock, I'm selling the aircraft --

10        THE COURT:  Well, because --

11        MR. OSTERBERG:  -- with the stock he doesn't have to

12   worry about anything other than --

13        THE COURT:  Well, it's a request for the bids for the

14   airplane, not for the company.

15        MR. OSTERBERG:  Very well, your Honor.

16        THE COURT:  You can negotiate separately for the

17   company if you are the winning bidder, but, at the moment,

18   we're talking about the airplanes only, and that was what was

19   put out for bid in the first place.

20        And I think we should go forward with a last round of

21   bidding.  So that those of you who are interested, submit a

22   closed bid and I will receive it and tell you who won.

23        MR. LIBBEY:  Your Honor, I think maybe we could take

24   a short recess and counsel and the parties may be able to

25   figure out the process we're going to use here.

1          THE COURT:  By all means, you go right ahead and do

2     that and let me know when you're done.

3          MR. LIBBEY:  Thank you.

4          THE COURT:  We may have to give up the courtroom

5     temporarily because one of my colleagues is using it and he

6     has a deliberating jury that may or may not have a verdict,

7     but if so, we'll find another place.

8          (Discussion off the record.)

9          THE COURT:  Court is in recess.

10          Let me know.  I assume you won't be much more than

11     10, 15 minutes, right?

12          MR. LIBBEY:  I don't believe so, your Honor.

13          (Recess taken.)

14          THE COURT:  Please be seated.

15          Before I look at these, let me make sure that I

16     understand exactly where we are.

17          As I understand, that whatever Pilatus bids is to be

18     reduced by -- you called it a finder's fee, but is it a

19     brokerage fee, a broker's fee?

20          MR. LIBBEY:  Yes, it is, your Honor.  I don't know if

21     that's --

22          THE COURT:  So, whatever number you gave me is to be

23     reduced by a broker's fee that you would have to pay?

24          MS. LYNCH:  Well, that the receiver would otherwise

25     have to pay, but that receiver's fee has been adjusted -- I

1  understand it's been adjusted from what the original agreement

2  was.  So, originally the finder's fee was to be four percent

3  of the purchase price and it's been reduced to a flat fee of

4  $150,000.

5          THE COURT:  Okay.  So, whatever number is in this

6  sealed bid, it has to be less than $150,000 to be comparable

7  to the others?

8          MS. LYNCH:  Yes, and we wrote that out.  We did the

9  gross bid, less the finder's fee, for a net bid.

10          THE COURT:  Okay.  And both Skytech's and Arltek's

11  number has to be reduced by $50,000 each, which would have to

12  be paid under your agreement with Pilatus to Pilatus?

13          MR. LIBBEY:  Correct, your Honor.

14          THE COURT:  And in other respects, the conditions are

15  substantially identical?

16          MR. LIBBEY:  They are, your Honor, as far as I

17  understand.

18          THE COURT:  Okay.  Hold your breath.

19          (Examining).  It's appropriate to reduce Skytech and

20  Arltek by 50 to be comparable with Pilatus, correct?  I mean,

21  that would be the net that's comparable to their net?

22          MR. LIBBEY:  Correct, your Honor.

23          THE COURT:  (Examining)  I will read you the amounts

24  in the order in which I have opened the bids.

25          Pilatus, $5,180,000, less 150,000.  $5,030,000.

1    Skytech, $4,825,000, less the 50.  $4 million -- if

2 my arithmetic is correct -- 775,000.

3    Arltek, $4,875,069, less 50,000.  $4,825,069.

4    These numbers suggest that Pilatus is the winner.

5    MR. LIBBEY:  If your math is correct, your Honor, and

6 I believe it is.

7    THE COURT:  Well, I will publish the bids and you're

8 all welcome to check the arithmetic, which wasn't much because

9 Pilatus did its own arithmetic.

10    MS. LYNCH:  Your Honor, there was one additional term

11 for Pro Star Pilatus' bid.  It was that if we were the winning

12 bidder, that the aircraft would be secured as soon as possible

13 and no later than -- I believe it was Friday.

14    THE COURT:  Than?

15    MS. LYNCH:  Than Friday.  No later than Friday.

16    THE COURT:  Any reason why that can't be done?

17    MR. LIBBEY:  No, your Honor.

18    THE COURT:  It will be done.

19    MS. LYNCH:  Thank you, your Honor.

20    (Attorneys examine bids.)

21    MR. MARULLO:  Your Honor, if I may.  While they're --

22    THE COURT:  No, wait a minute.  Let them do their

23 math in peace and quiet, please, Mr. Marullo.

24    (Attorneys continue to examine bids.)

25    THE COURT:  Now, two other things.

1            As I understand it, if for some reason the sale would

2    not -- does not close in 30 days, then the winner would be

3    Arltek, as the next highest bidder.

4            MS. LYNCH:  Exactly.

5            THE COURT:  Agreed?

6            MR. LIBBEY:  Correct, your Honor.

7            THE COURT:  And, finally, is there any reason why I

8    cannot accept the proposed order that the receiver has given

9    me with respect to this?

10           MR. MARULLO:  The only thing I was --

11           THE COURT:  Mr. Marullo.

12           MR. MARULLO:  The only thing I was going to suggest,

13   your Honor, was that we change the order to include the next

14   highest bidder, unless you want to write that into the order

15   that we gave you.

16           THE COURT:  All right.  Give me the language.

17           They have a verdict?

18           COURTROOM DEPUTY URSO:  Yes.

19           THE COURT:  We're almost done.

20           COURTROOM DEPUTY URSO:  Yes, I just said that.

21           THE COURT:  The correct name of Pilatus is Pro Star

22   Pilatus Center?

23           MS. LYNCH:  Yes.

24           THE COURT:  Okay.  I will fill that in.  And what's

25   the language you want me to put in there?

```
 1            MR. MARULLO:  Probably something simple like you

 2    suggested, your Honor, which is, "If Pro Star Pilatus fails to

 3    close within 30 days of this order, the next" --

 4            THE COURT:  The order will be dated today.

 5            MR. MARULLO:  Right.  So, within 30 days of today,

 6    Arltek's bid will be accepted as the highest bid at that

 7    point.

 8            THE COURT:  Okay.

 9            MR. MARULLO:  And they will be expected to close

10    within 30 days of that date.

11            THE COURT:  All right.

12            MR. MARULLO:  Thank you, your Honor.

13            THE COURT:  I thank you all.

14            MR. LIBBEY:  Thank you very much, your Honor.

15            THE COURT:  Especially the receiver.  Obviously,

16    you've done a lot of hard work.

17            MR. JENKINS:  Thank you.

18            THE COURT:  And, Mr. Osterberg, I would like to see

19    you just briefly on a matter not related to this case.

20            Court is in recess.

21            MR. LIBBEY:  Thank you, your Honor.

22            (Adjourned, 3:36 p.m.)

23

24

25
```

1          C E R T I F I C A T E

2          I, Catherine A. Handel, Official Court Reporter of

3     the United States District Court, do hereby certify that the

4     foregoing transcript, from Page 1 to Page 20, constitutes to

5     the best of my skill and ability a true and accurate

6     transcription of my stenotype notes taken in the matter of

7     Civil Action No. 02-12489-RWZ, Global NAPS, Inc. vs. Verizon

8     New England, Inc., et al.

9

10    April 20, 2011          /s/ Catherine A. Handel
      Date                    Catherine A. Handel, RPR-CM, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25