## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBAL NAPS, INC.      ) | |
|     Plaintiff     ) | |
|      ) | Civil Action No. 02-12489-RWZ |
| v.      ) | |
|      ) | Civil Action No. 05-10079-RWZ |
| VERIZON NEW ENGLAND, INC,  ) | |
|     Defendant     ) | |
|      ) | |
| v.      ) | |
|      ) | |
| GLOBAL NAPS NEW     ) | |
| HAMPSHIRE, INC     ) | |
| ET AL.,     ) | |
|     Counterclaim Defendants  ) | |

### SUPPLEMENTAL ORDER TO THIS COURT'S DECEMBER 16, 2011 ORDER AUTHORIZING THE SALE OF CERTAIN RECEIVERSHIP ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO QUALITY SPEAKS, LLC.

On December 16, 2011, this Court entered an Order (Document 816) (the "Order")

authorizing the sale of certain receivership assets pursuant to an Asset Purchase Agreement (the

"APA") free and clear of all liens, claims, interests, and encumbrances to Quality Speaks LLC.

This Supplemental Order details the closing terms and procedures to accomplish the sale

transaction with Quality Speaks LLC (the "Sale Transaction") and specifically addresses certain

objections of creditors and parties-in-interest to such sale to Quality Speaks LLC, or its assign,

Cyberdyne Innovations, LLC (the "Purchaser").

**IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

## NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)

1. As described in the Response filed on behalf of Amtrak on October 6, 2011 (Document 771), there exist multiple License Agreements between GNAPs and Amtrak, some of which are still in effect, some of which have expired and some of which have been terminated (collectively the "Amtrak License Agreements").

2. Consistent with Finding #6 in this Court's Order entered on December 16, 2011 (Document 816) (the "12/16/11 Order"), the "Response of Quality Speaks, LLC to Objections to Sale" (Document 807 at 5), and the "Receiver's Recommendation to the Court of the Highest and Best Offer for the Sale of Certain Estate Assets" (Document 790 at 3), and notwithstanding anything in this Order or in the APA to the contrary:

(i)      No Amtrak License Agreement or interest in any such License Agreement is being acquired, or is to be used, by Purchaser under the terms and conditions of the 12/16/11 Order, the APA, or this Order;

(ii)     No other asset related to GNAPs, including personal property, huts or equipment located on Amtrak property ("GNAPs' Assets"), or interest in any such GNAPs' Assets is being acquired, or is to be used, by Purchaser under the terms and conditions of the 12/16/11 Order, the APA, or this Order;

(iii)    The Receiver will have the opportunity to dispose of Amtrak License Agreements and such other GNAPs' Assets separately to recover additional funds for the Estate; and

2

(iv)     This Supplemental Order does not alter or adjudicate any rights and/or liabilities relating to Amtrak License Agreements or to such GNAPs' Assets.

## AMERICAN REGISTRY FOR INTERNET NUMBERS (ARIN)

3.   The receivership estate has the exclusive rights to use and transfer certain IP numbers subject to the policies, guidelines and regulations of the American Registry of Internet Numbers, LTD ("ARIN"), published on its website, as may be amended and supplemented from time to time (collectively, "ARIN's Policies"), including ARIN's policies with respect to the transfer of IP numbers ("ARIN's Transfer Policies") and the receivership estate, through the Receiver, and will undertake reasonable efforts to transfer its exclusive rights to use the IP numbers to Purchaser pursuant to the terms and conditions set forth in ARIN's Transfer Policies.

4.   Notwithstanding anything in the Order, this Supplemental Order, or the APA to the contrary, the receiver estate's rights and interests in certain IP numbers are subject to ARIN's Policies, including ARIN's Transfer Policies. The receivership estate's rights and interests in the IP Numbers may only be transferred in compliance with the ARIN's Transfer Policies and with the consent of ARIN. The receiver estate's rights and interests in the IP Numbers may not be sold free and clear of ARIN's Policies, including ARIN's Transfer Policies. Thus, the transfer authorized pursuant to this Supplemental Order shall not be free and clear of ARIN's Policies, including ARIN's Transfer Policies.

5.   Nothing in the Order, this Supplemental Order, or in the APA shall be construed as exempting the receivership estate, through the Receiver, or the Purchaser from complying with ARIN's Policies. Upon approval by ARIN and satisfaction of ARIN's Transfer Policies,

3

Purchaser may exercise the receivership estate's rights and interest in the IP Numbers. To the extent necessary, Purchaser will participate in the ARIN approval process. Notwithstanding anything contained in these paragraphs 1-5, so-called "legacy" numbers owned and/or controlled by the receivership estate may not be subject to ARIN's Policies, including ARIN's Transfer Policies.

## PENNSYLVANIA PUBLIC UTILITY COMMISSION ("PA PUC")

6. The Receiver of Global NAPs, Inc. and affiliated entities ("GNAPs"), currently possesses a PA PUC Certificate of Public Convenience ("GNAPs Certificate") issued under the Pennsylvania Public Utility Code.

7. The Receiver shall continue to remit $5,000.00 monthly into the existing escrow account established pursuant to this Court's disposition of February 15, 2011, until such time as the Receiver surrenders such GNAPs Certificate to the PA PUC.

8. Quality Speaks, LLC has represented to the PA PUC that it does not intend to conduct business in Pennsylvania which would require that it obtain a Certificate of Public Convenience. Should Quality Speaks, LLC, or any alternative purchaser of the GNAPs assets, desire to conduct business in Pennsylvania, Quality Speaks, LLC, or such alternative purchaser, will forthwith file an application for a Certificate of Public Convenience pursuant to Pennsylvania law and will assume responsibility for funding the $5,000.00 monthly escrow upon the submission of such application for said Certificate and will continue to fund such escrow until the PA PUC takes action upon such application.

## SUNRISE TECH PARK CO., LLC ("SUNRISE TECH")

9.  Sunrise Tech, as the landlord under a lease agreement with Global NAPs Realty, Inc. dated August 20, 1998, and amended on September 12, 2008, for certain premises located at 1234 Sunrise Valley Drive, Reston, Virginia (the "Premises") shall permit the Receiver and/or the Purchaser to remove any property of the Receivership Estates from the Premises without hindrance or interference by Sunrise Tech, its employees, agents, officers, or attorneys.

10. Sunrise Tech shall permit the Receiver and/or the Purchaser to transition the GNAPs network from the Premises without hindrance or interference by Sunrise Tech, its employees, agents, officers, or attorneys.

11. Upon completion of the removal of the aforementioned Receivership property and the transition of the GNAPs network from the Premises, the Receiver shall surrender the Premises to Sunrise Tech, and shall pay such amounts to Sunrise Tech, if any, as are determined solely in the discretion of this Court.

## UNIVERSAL SERVICE ADMINISTRATIVE COMPANY ("USAC")

12. Through and including the Closing Date, the Receiver shall file all Quarterly Telecommunication Reporting Worksheets (FCC Form 499-Q) as they shall become due, if any, for GNAPs and Broadvoice, Inc. The Receiver shall be responsible for and shall pay any and all obligations to the Universal Service Fund (the "USF") that arise hereunder (under paragraphs # 12 through #19) prior to the Closing Date.

13. With respect to any and all unpaid post-Receivership USF obligations as of the Closing Date, USAC reserves all rights to seek payment of interest, penalties, and any other charges or fees required by relevant Federal telecommunications laws, regulations, and/or orders and directives of the Federal Communications Commission. The Receiver reserves all rights to object thereto.

14. Both the Receiver and USAC have fully reserved all rights regarding any disputes as to the appropriate forum to adjudicate any disputes regarding the USF obligations and/or credits thereof including, without limitation, all issues regarding the so-called "Doctrine of Administrative Exhaustion."

15. Within ten (10) days after the Closing Date, the Receiver shall submit to USAC the requisite documentation necessary to request the deactivation of the Filer ID for each of GNAPs and Broadvoice, Inc. in order to establish a "deactivation date" as of the Closing Date. The Receiver shall comply with the deactivation requirements as set forth on the Official USAC website.

16. Through and including the Closing Date, the Receiver shall file all Annual Telecommunications Reporting Worksheets (FCC Form 499-A) for GNAPs and Broadvoice as they   become due, if any. In addition, the Receiver shall file a final Annual Telecommunication Reporting Worksheet (FCC Form 499-A) for the calendar year during which the Receiver establishes the deactivation dates (i.e., if the Receiver "deactivates" during 2012, a final FCC Form 499-A will be required during 2013 to report actual revenue from January 1, 2012 through the deactivation date).

17. The Receiver shall pay the unpaid post-Receivership USF obligations, if any, pursuant to any subsequent Order of this Court, and until such time as all post-Receivership Obligations are

6

resolved and paid, the Receiver shall retain sufficient funds on hand and available to pay the USF Obligations in the full amount asserted by USAC, which amount allegedly totals approximately $450,000 as of January 13, 2012. The Receiver and USAC reserve the right to request that the amount reserved for this purpose be modified by further Court Order. The Purchaser shall have no liability for USF Obligations that arise prior to the Closing Date.

18. In the event that submission of any Annual Revenue Report (i.e., FCC Form 499-A) by or on behalf of either Global NAPS, Inc. and/or Broadvoice, Inc. results in a "net credit" of such entity's USF obligations (i.e., a remaining credit after full satisfaction of all unpaid USF obligations) for any revenue period prior to the Closing Date, said credit shall remain property of the Receivership estate and the Purchaser shall have no rights or claims thereto.

19. USAC and the Receiver have reserved all rights regarding USAC's assertion that all or a portion of the Sale Proceeds are the sole property of the estate of Broadvoice, Inc.

## FURTHER CLOSING TERMS AND PROCEDURES

20. The Receiver and the Purchaser have satisfied the requirements of the Court to consider the rights of all counter-parties to executory contracts and all other persons, and the Court has exercised its equitable powers in approving the sale of the subject assets (the "Purchased Assets") contemplated by the APA in connection with the Sale Transaction and the assumption and assignment of any purchased contracts (the "Purchased Contracts").

21. It is reasonable and necessary to provide for a transition period of up to six months commencing with the Closing Date as defined in the APA (the "Transition Period") during which the Purchaser may utilize certain Purchased Assets in their current location and to

allow for the orderly transfer of such Purchased Assets to Purchaser, as contemplated in the

APA. The Purchaser may use and occupy the premises at (i) Pasqualucci Family Trust, 10

Merrymount Rd, Quincy MA (ii) 9 Executive Park Drive, N. Billerica, MA, and (iii) JFK

Building, 1120 Hancock St., Quincy, MA (collectively the "Premises") during the

Transition Period, or for such shorter time as may be designated by the Purchaser pursuant to

the terms of the APA, at any time after the date of this Supplemental Order.

22. During the Transition Period, Purchaser will pay Receiver for each Premises the monthly

amounts identified in the APA except that such payment obligation shall be prorated for any month

during the Transition Period for which the Purchaser uses and occupies the Premises for less than the

full month.

23. During the Designation Period, as defined in the APA, the Purchaser may utilize

certain Purchased Assets through the use and occupation on a month to month basis of the

Receivership Estates' premises listed on Exhibit D to the APA (the "Designation

Premises").to allow for the orderly transfer of such Purchased Assets to Purchaser, as

contemplated in the APA, including the Purchaser's continued use of the goods and services

provided by vendors and/or suppliers listed on Exhibit E to APA (the "Designation Contracts").

The Designation Period may be reduced with respect to particular Designation Premises or

Designation Contracts on fifteen (15) days written notice to the respective Landlord or the counter

party to such Designation Contracts, which notice may be delivered at any time after the date of this

Supplemental Order.

24. During the Designation Period, Purchaser will be obligated to pay the Receiver for

Purchaser's use and occupancy of the Designation Premises during the Designation Period, as such

period may be reduced by the Purchaser in the manner set forth in Paragraph 23, which payment

obligation shall be prorated for any month during the Designation Period for which the Purchaser uses and occupies the Designation Premises for less than the full month.

25. During the Designation Period, Purchaser will be obligated to pay the vendor of each Designation Contract the charges for goods and services provided to the Purchaser at the rates currently being paid by the Receiver for Purchaser's receipt of such goods and services during the Designation Period, as such period may be reduced by the Purchaser in the manner set forth in Paragraph 23, which payment obligation shall be prorated such that Purchaser will be obligated only to pay for its actual receipt of such goods and services.

26. At any time prior to the end of the Designation Period the Purchaser may elect to receive an assignment of any of the leases for the Designation Premises (each, a "Designation Lease") or any of the Designation Contracts (if in fact such vendor relationship is the subject of a contract). The Receiver shall assume and assign such Designation Leases or Designation Contracts to the Purchaser without further order of the Court. The payment of all Pre- Receivership Cure Costs due to the landlord or counterparty shall be paid by the Purchaser.

27. In the absence of a stay pending appeal, the Receiver and Purchaser may close the Sale Transaction at any time on or after entry of this Supplemental Order.

28. Pre-Receivership Cure Costs on Purchased Contracts payments may be made, after consultation with the Receiver, without further order of the Court. The Receiver shall have no liability for Pre- Receivership Cure Costs and Purchaser shall have no liability for Post- Receivership Cure Costs.

29. The Receiver, as Receiver of the Receivership Estates, has title to (or in the case of the leased assets, valid and enforceable leasehold rights in, or in the case of certain licenses, has valid and enforceable rights thereunder), collectively the "Purchased Assets", and pursuant to this

9

Supplemental Order has the right to sell, transfer, convey, assign and deliver, the Purchased Assets to Purchaser free and clear of all Claims (as defined herein). The Receiver is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the APA, attached hereto as Exhibit 1, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and to take all further actions and execute such other documents as may be (a) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Purchased Assets; (b) necessary or appropriate to the performance of the obligations contemplated by the APA; and (c) as may be reasonably requested by the Purchaser to implement the APA and consummate the Sale Transaction in accordance with the terms thereof, including, without limitation, modification of the schedule of Purchased Contracts attached to the APA to correct errors (including Contracts misdescribed or inadvertently omitted, provided, however, that due notice to contract counterparties shall be given by the Receiver to such contract counterparty for any inadvertently omitted contracts), all without further order of the Court, or to seek a further Order of the Court to clarify any such matter if requested by the Purchaser or Receiver.

30. The December 16, 2011 Order, this Supplemental Order and the APA approved hereby shall be binding in all respects upon the Purchaser, the Receiver, the Receivership Estates and the Judgment Debtors, their affiliates, all creditors (whether known or unknown) of any of the Receiver, Receivership Estates or the Debtors, all interested Persons, and their respective successors and assigns, including, but not limited to, any party, who had notice, asserting a claim relating to the Purchased Assets and any non-debtor counterparty to the Purchased Contracts.

31. The transfer of the Purchased Assets to the Purchaser (a) shall be a valid, legal, binding and effective transfer; (b) shall vest the Purchaser with all right, title and interest of the Receiver, the Receivership Estates, and Judgment Debtors in the Purchased Assets; and (c) except for claims related to Assumed Liabilities (as that term is defined in the APA), shall be free and clear of all claims, as that term is defined in §101 (5) of the Bankruptcy Code   , Liens (as such term is defined in the APA), Liabilities (as that term is defined in the APA), and Damages (as that term is defined in the APA), whether arising before or after the Receivership date, whether at law or in equity, including all claims or rights based on any successor or transferee liability, all labor and employment claims (including without limitation WARN Act liability), all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Purchased Contract and all rights at law or in equity (collectively, "Claims"). This paragraph 31 shall not be applicable to those matters which are otherwise separately and specifically addressed herein.

32. Except as otherwise expressly provided in the APA or as otherwise agreed by the parties, all persons ("Persons") (and their respective successors and assigns), holding Claims arising under or out of, in connection with, or in any way relating to, the Judgment Debtors or the Receivership Estates, the ownership or operation of the Purchased Assets prior to Closing (as defined in the APA), or the sale or transfer of the Purchased Assets to the Purchaser, are hereby barred, estopped and enjoined from asserting such Claims against the Purchaser, its successors or assigns, its property or the Purchased Assets.

33. If any Person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against the Purchased Assets has not

11

delivered to the Receiver prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests that the Person or entity has with respect to the Judgment Debtors and the Receivership Estates or the Purchased Assets or otherwise, then only with regard to Purchased Assets (a) the Receiver is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is authorized to file, register or otherwise record a certified copy of this Supplemental Order. This Supplemental Order is deemed to be in recordable form sufficient to be placed in any filing or recording system of each and every federal, state, or local government agency, department or office.

34. All Persons in possession of any of the Purchased Assets shall surrender possession of such Purchased Assets to the Receiver forthwith.

35. Following the Closing of the Sale Transaction, no holder of any Claim including Landlord or Vendors or other Person shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim. All Persons, including the Judgment Debtors and the Judgment Debtors' Agents, and Frank Gangi and any person operating under Frank Gangi's direction or control, and any employee or agent of the Receivership Estates, are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Receiver to transfer the Purchased Assets to the Purchaser or with the operation of the Purchaser's business or its enjoyment of the Purchased Assets or from directly or indirectly interfering with, taking action to reduce the value of, or otherwise damage the value of the Purchased Assets, including any contact or solicitation of any sort with existing Broadvoice subscribers.

12

36. The Receiver's assumption and assignment or other transfer to the Purchaser of all of the Receiver's, the Receivership Estates' and/or the Judgment Debtors' right, title and interest in or under the Purchased Contracts are hereby approved, with only such exclusions from Purchased Contracts as the Purchaser may designate by notification to the Receiver in writing.

37. The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract that prohibits, restricts or conditions such assignment or transfer. The Purchaser will be responsible to pay all amounts accruing under the Purchased Contracts on and after the Closing Date. The Purchaser shall have no liability or obligation for any amount that is due or accrued under a Purchased Contract, Designation Lease or a Designation Contract prior to the Closing Date.

38. Any objection by any counterparty to an executory contract that such counterparty's consent was required to the assumption and assignment of such contract and all rights to assert any such objections that such counterparty has not raised are conclusively deemed waived.

39. The Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of the December 16, 2011 Sale Order, this Supplemental Order and the APA, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to the December 16, 2011 Sale Order, this Supplemental Order or the APA and to enter any orders with respect to the Purchased Contracts.

40. The Receiver having made the requisite filings pursuant to 28 U.S.C. section 754 in the districts identified on Exhibit 2, has vested this Court with jurisdiction and control over all such

property of the Receivership Estates which is located in such districts and the Court approves the sale of any such property to Purchaser pursuant to the terms of this Supplemental Order.

41. The Court approves the terms of the APA as fair and reasonable and negotiated in good faith in accordance with the procedures established by the Court.

42. To the extent any conflicts exist between this Supplemental Order and the APA, the terms of this Supplemental Order shall govern and control; provided, however, that the rights and obligations of the Purchaser and the Receiver under the APA shall not be altered without the written consent of the Purchaser and Receiver.

**IT IS SO ORDERED on this 14th day of February, 2012.**

Honorable Rya W. Zobel
United States District Court

14